**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MELVIN ELLIS HOLLY,

      Defendant-Appellant.

No. 05-7130

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-04-114-01-F)**

---

Warren Gotcher, Gotcher and Belote, McAlester, Oklahoma, for Appellant.

Robert G. Guthrie, Assistant United States Attorney (Sheldon J. Sperling, United States Attorney, with him on the brief), Muskogee, Oklahoma, for Appellee.

---

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  Introduction

Melvin Holly was convicted by a jury on fourteen criminal counts, including five counts of felony deprivation of rights under color of law involving

aggravated sexual abuse. In the district court's instruction to the jury on the definition of aggravated sexual abuse, the court informed the jury it need not find actual violence and could infer the requisite degree of force from a disparity in size or coercive power. It further explained the jury could alternatively find the requisite fear element if there was a fear of some bodily harm, which could also be inferred from a disparity in size or power, or control over the victim's everyday life. On appeal, Holly argues the district court erroneously instructed the jury on the definition of aggravated sexual abuse. He therefore challenges his convictions on the five counts of felony deprivation of rights, all of which required a finding of aggravated sexual abuse. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** and **remands** the case to the district court to vacate the convictions as to counts II, IV, VI, and VII. The conviction on Count V is **affirmed** upon harmless error review.

## II. Background

Holly, the sheriff of Latimer County, was indicted in a fifteen-count superseding indictment that charged eight counts of misdemeanor deprivation of rights under color of law in violation of 18 U.S.C. § 242; five counts of felony deprivation of rights under color of law involving aggravated sexual abuse in violation of 18 U.S.C. § 242; one count of making a false statement in violation of 18 U.S.C. § 1001; and one count of tampering with a witness in violation of 18

U.S.C. § 1512(a)(2)(C). The indictment arose out of a series of sexual assaults perpetrated by Holly against inmates and employees of the Latimer County Jail, as well as the daughter of an employee of the jail. Following a five-day jury trial, Holly was convicted on all counts except one count of misdemeanor deprivation of rights under color of law. Holly challenges his conviction only as to the five counts of felony deprivation of rights. On each of these five counts, the jury found the deprivation of rights involved aggravated sexual abuse.

With respect to the five counts at issue in this appeal, there was testimony presented at trial that Holly had nonconsensual sex with four inmates at the Latimer County Jail and attempted to have sex with another whose resistance ultimately deterred him. Each of the five victims testified at trial. Summer Hyslop testified that Holly took her from the jail to his farm where he parked the car, told her to get into the back seat, and then proceeded to rape her. She explained she did not run away because she was scared he would shoot her. In addition, Hyslop stated that on another occasion, Holly raped her on the floor of his office at the jail. Vicki Fowler testified that Holly forced her to have sex with him in his office after allowing her to make a personal phone call. Amber Helmert related a situation in which Holly attempted to have sex with her in his office after calling her to the office using the pretext of a family emergency. Helmert testified that she yelled and physically resisted him, ultimately causing him to stop the assault. Although her resistance prevented Holly from having sex

with her, Helmert testified that he penetrated her vaginal area with his finger. Rebecca Foreman testified that Holly took her from the jail to a trailer in a nearby town where he made sexual advances and proceeded to have sex with her against her will. April Partain testified that Holly had sex with her in his office against her will and that she did not fight back because she was afraid of his reaction. Partain explained she had sex with Holly on multiple occasions.

While each of the victims testified she was scared at the time of the sexual assaults, only Helmert referenced any specific threat made by Holly during the sexual encounter. Each victim did, however, testify that Holly was wearing a gun just prior to the sexual assault and placed it within reach while the incidents occurred. Helmert further elaborated that Holly looked repeatedly at his gun just prior to the sexual assault and threatened to "get to" her family, including her nine-year-old sister, if she did not cooperate. Hyslop, Foreman, and Partain all admitted, either in their trial testimony or in a prior statement, that they had sex or flirted with Holly partially for the benefits and jail privileges they received as a result. Only Helmert testified she physically resisted Holly's advances.

In defense, Holly's primary theory was that the sexual acts in question did not occur and could not have occurred due to his failing health. His doctor testified that Holly had extreme bowel problems and impotence during the time periods in question and that these health problems would have made sexual

intercourse impossible. Holly also testified on his own behalf, specifically denying the allegations of each government witness.

In formulating its jury instruction on aggravated sexual abuse, the district court rejected Holly's requested jury instruction that simply quoted the aggravated sexual abuse statutory language. It instead gave the following instruction:

> The term "aggravated sexual abuse" means that a person was caused to engage in a sexual act by another's use of force against that person or by threatening or placing that person in fear that any person will be subjected to death, serious bodily injury, or kidnapping.

> The term "sexual act" as referenced above means contact between the penis and the vulva **or** the penetration, however slight, of the genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

> You may find that the defendant's conduct involved aggravated sexual abuse if you find that he used force during the alleged sexual assault. To establish force, the government need not demonstrate that the defendant used actual violence. The requirement of force may be satisfied by a showing of restraint sufficient to prevent the victim from escaping the sexual conduct. Force may also be implied from a disparity in coercive power or in size between the defendant and the victim or from the disparity in coercive power, combined with physical restraint.

> Alternatively, you may find the defendant's conduct involved aggravated sexual abuse if you find the defendant placed the victim in fear of death, serious bodily injury, or kidnapping. The requirement of fear may be satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm. Like force, fear can be inferred from the circumstances, particularly a disparity

in power between the defendant and the victim. Further, a defendant's control over a victim's everyday life can generate fear.

Holly did not object to the first two paragraphs of this instruction, but he argued the rest of the instruction was improper. The jury convicted Holly on all five counts involving aggravated sexual abuse: Count II involving Hyslop, Count IV involving Fowler, Count V involving Helmert, Count VI involving Foreman, and Count VII involving Partain.

## III. Analysis

Pursuant to 18 U.S.C. § 242, "[w]hoever, under color of any law . . . willfully subjects any person in any State . . . to the deprivation of any rights" violates federal law. The statute sets forth three separate categories of violations, each with a different maximum punishment. Holly was convicted under the third category, which states in relevant part that "if such acts include . . . aggravated sexual abuse, or an attempt to commit aggravated sexual abuse . . . [the defendant] shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death." 18 U.S.C. § 242. Because aggravated sexual abuse is not defined in § 242, the statute necessarily requires reference to 18 U.S.C. § 2241, the federal aggravated sexual abuse statute. Under § 2241(a), an individual commits aggravated sexual abuse if he "knowingly causes another person to engage in a sexual act—(1) by using force against that

other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." Thus, although Holly's convictions on the challenged counts were pursuant to § 242, these convictions turn on whether his acts violated the substantive provisions of § 2241.

Holly argues the district court erroneously instructed the jury on the definition of aggravated sexual abuse. While he does not dispute the general definition of aggravated sexual abuse drawn directly from the statutory language of § 2241, he contends the district court erred in its subsequent explanation of the requisite elements of a violation. He argues the language of the jury instruction at issue eliminated the government's burden of proving the fear of serious bodily harm. Specifically, Holly challenges the district court's instructions as to the alternative elements of force and fear. This court "review[s] a district court's decision to give a particular jury instruction for an abuse of discretion and consider[s] the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *United States v. Gwathney*, 465 F.3d 1133, 1142 (10th Cir. 2006).

### A. Error Analysis

#### 1. Force Instruction

Holly first argues the district court erred in instructing the jury that force may be implied from a disparity in size or coercive power between the defendant

and the victim. He contends that such an instruction essentially directs a guilty verdict against the defendant in circumstances such as these because, as a sheriff, Holly necessarily had power over the prisoners. By allowing an inference of force from this fact alone, Holly argues, the instruction impermissibly reduced the government's burden of proof.

The term "force" is not defined by statute and this court has not previously defined it for purposes of § 242 or § 2241. Nevertheless, this court has construed the term in the context of USSG § 2A3.1(b)(1), which allows for a sentencing enhancement when the defendant's conduct violates § 2241(a) or (b). *See United States v. Reyes Pena*, 216 F.3d 1204, 1211 (10th Cir. 2000). In doing so, this court held "a force enhancement is appropriate when the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact." *Id.* (quotation omitted). We further stated that "force may be inferred by such facts as disparity in size between victim and assailant, or disparity in coercive power." *Id.* This court has therefore explained the element of force within the meaning of aggravated sexual abuse does not require "the brute force [commonly] associated with rape." *Id.*

Contrary to Holly's assertions, there is no reason for this court to distinguish between the definition of force in the context of USSG § 2A3.1(b)(1) and the definition of force in the context of § 2241. The Guideline provision at issue in *Reyes Pena* provides for a four-level enhancement "[i]f the offense

involved conduct described in 18 U.S.C. § 2241(a) or (b)." USSG § 2A3.1(b)(1).

Because application of the sentencing enhancement requires a violation of the

statute, the requisite degree of force is identical. Other circuits addressing the

meaning of force for purposes of § 2241 have similarly relied on cases

interpreting the statute as part of a review of a sentencing enhancement. *See, e.g.*,

*United States v. Simmons*, 470 F.3d 1115, 1121 (5th Cir. 2006) (citing *United*

*States v. Lucas*, 157 F.3d 998, 1002 (5th Cir.1998)); *United States v. Allery*, 139

F.3d 609, 611 (8th Cir. 1998) (citing *United States v. Fire Thunder*, 908 F.2d 272,

274 (8th Cir. 1990)). Thus, this circuit's case law on the meaning of force for

purposes of the application of USSG § 2A3.1(b)(1) applies with equal force

outside the sentencing context.

This court also rejects Holly's contention that force may be inferred from a

disparity in size or power only where the defendant is an adult and the victim is a

child. Although this circuit's cases expressing the propriety of such an inference

have often involved an act committed upon a child by an adult, there is no reason

to limit its application to such facts. Rather, an adult/child relationship is offered

as but one example of a disparity in size or coercive power. *See Reyes Pena*, 216

F.3d at 1211 (explaining force may be inferred from a disparity in size or power,

"such as that between an adult and a child"). Indeed, one of the cases on which

*Reyes Pena* relied referenced the inference in a case involving abuse perpetrated

by a jail warden against an inmate. *See Lucas*, 157 F.3d at 1002 (5th Cir. 1998).

There is no reason to limit the inference of force from disparity in size or power to cases involving child victims and this court declines to do so in this case.

The district court therefore properly instructed the jury on the element of force. After properly stating the element of force does not require proof of actual violence, it then indicated, consistent with *Reyes Pena*, that "[t]he requirement of force may be satisfied by a showing of restraint sufficient to prevent the victim from escaping the sexual conduct." The district court went on to instruct that this required showing could be implied, rather than proved directly, "from a disparity in coercive power or in size." Contrary to Holly's claim that the instruction directed a guilty verdict, the instruction simply permitted such an inference rather than requiring it. Because the instruction was consistent with the prevailing case law, the instruction as to force was not error.

### 2. Fear Instruction

Holly challenges the district court's jury instruction on the element of fear in two respects. First, he argues it was error to instruct the jury that "[t]he requirement of fear may be satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm." Second, he argues it was error to allow the jury to infer fear from "a disparity in power between the defendant and the victim" or "a defendant's control over a victim's everyday life." Because the district court's use of language suggesting the victim need only be placed in fear

of "some bodily harm" impermissibly reduced the degree of fear necessary to sustain a conviction, this court concludes the instruction on fear was erroneous.

As noted above, a defendant commits aggravated sexual abuse in violation of § 2241(a)(2) only "by threatening or placing [another] person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." Although the victim's fear may alone support a conviction without the use of actual force, a specific and severe form of fear is required. It is this heightened degree of fear that distinguishes *aggravated* sexual abuse from the separate crime of sexual abuse set forth in 18 U.S.C. § 2242. A violation of § 2242(1) merely requires that the defendant "causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any other person will be subjected to death, serious bodily injury, or kidnapping)." Thus, § 2242(1) sets forth a lesser degree of fear than § 2241(a)(2). A defendant commits sexual abuse if he places the victim in fear, but commits aggravated sexual abuse only if that fear rises to the level of fear of death, serious bodily injury, or kidnapping.

The jury instruction given by the district court failed to make this critical distinction between §§ 2241(a)(2) and 2242(1). Although the court began by paraphrasing the statutory language of § 2241(a)(2), it then used language more closely resembling that of § 2242(1). By instructing the jury that the fear element is satisfied by fear of "some bodily harm," the district court eliminated the

heightened degree of fear required to support a conviction for aggravated sexual abuse. In doing so, the district court essentially made §§ 2241(a)(2) and 2242(1) identical, a result explicitly precluded by the language of the statutes. While it was not inappropriate for the court to describe circumstances that may generally give rise to fear, its use of the "some bodily harm" language constituted independent error, regardless of any other language used in the jury instruction.

In formulating its jury instruction, the district court relied on language derived from *United States v. Lucas*. 157 F.3d at 1002-03. To the extent that language defined the severity of fear required to support a conviction, however, it is inapposite because *Lucas* addressed the meaning of fear within § 2242(1), which expressly excludes the specific category of heightened fear necessary to satisfy § 2241(a)(2). *Id.*; *see also United States v. Castillo*, 140 F.3d 874, 885 (10th Cir. 1998) (using "some bodily harm" language in the context of § 2242). While fear of "some bodily harm" certainly satisfies the broad definition of ordinary fear under § 2242(1), it cannot sustain a conviction under § 2241(a)(2). Because the jury instruction did not clearly require the jury to find the heightened level of fear of death, serious bodily injury, or kidnapping necessary to convict Holly of felony deprivation of rights under color of law, involving aggravated sexual abuse, the instruction was erroneous.

**B. Harmless Error Analysis**

Having resolved that the jury was instructed on two independent bases for conviction, force and fear, one of which was proper and one of which was erroneous, this court must now resolve whether any of Holly's convictions on Counts II, IV, V, VI, and VII can nevertheless be affirmed. This determination requires an analysis of whether harmless error review is applicable and, if so, whether the instructional error was harmless as to any count of conviction.

### 1. Availability of Harmless Error Review

As the Supreme Court confirmed in *Neder v. United States*, the conclusion that a jury instruction was erroneous does not necessarily end the inquiry. 527 U.S. 1, 7 (1999). Rather, like most constitutional violations, an instructional error on an element of the offense is generally subject to harmless error review.[1] *Id.* at 8-9; *Rose v. Clark*, 478 U.S. 570, 579-80 (1986). In this case, however, the apparent availability of harmless error review must be squared with the well-established rule of *Stromberg v. California*, 283 U.S. 359, 368 (1931).

---

[1]While *Neder v. United States*, 527 U.S. 1 (1999), only directly addressed the application of harmless error review to a jury instruction that omitted an element of the offense, its holding applies with equal force to the misdescription of an element. Indeed, *Neder* stated the Court had "often applied harmless-error analysis to cases involving improper instructions on a single element of the offense." 527 U.S. at 9; *see also id.* at 14 (explaining petitioner's argument of structural error would "call into question the far more common subcategory of misdescriptions").

In *Stromberg*, the Court was presented with a state conviction for the display of a banner "as a sign . . . of opposition to organized government, . . . an invitation . . . to anarchistic action, or [as] propaganda that is of a seditious character." *Stromberg*, 283 U.S. at 363. The Court held that the first of the three alternative bases upon which the conviction could rest was "repugnant to the guaranty of liberty contained in the Fourteenth Amendment" and, thus, "could not constitute a lawful foundation for a criminal prosecution." *Id*. at 369, 368. The Court reversed the conviction because it was impossible to determine whether the guilty verdict rested on one of the constitutional grounds. *Id*. at 369-70.

In *Zant v. Stephens*, the Court clarified that *Stromberg* "requires that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient," unless it is possible to determine the verdict rested on the valid ground. 462 U.S. 862, 881 (1983); *see also Griffin v. United States*, 502 U.S. 46, 59 (1991) (limiting the *Stromberg* rule to cases involving grounds for conviction that are "legally inadequate" rather than "factually inadequate"); *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1 (1978). In *Stromberg*, the Court did not conduct a harmless error analysis with respect to the constitutionally invalid ground to determine if it was sufficient to sustain the conviction. Such an analysis was both unnecessary and impossible because there were *no* circumstances under which a conviction

based on the invalid ground could be upheld.  *Stromberg*, 283 U.S. at 369 (holding the invalid ground for conviction was "so vague and indefinite" that it was "repugnant to the guaranty of liberty contained in the Fourteenth Amendment").  Thus, the conviction in *Stromberg* was reversed because the Court was able to determine, without the necessity of conducting a harmless error analysis, that one of the independent grounds was insufficient to sustain the conviction.

Like *Stromberg*, there is nothing in this case to conclusively indicate the jury convicted Holly on the force theory, for which there was a proper jury instruction, rather than on the fear theory, for which the jury instruction was erroneous.  Unlike *Stromberg*, however, the error here was merely an instructional error and did not involve a theory of conviction which "could not constitute a lawful foundation for a criminal prosecution."[2]  *Stromberg*, 283 U.S. at 368.  As a

---

[2]The dissent takes issue with the majority's characterization of the error in this case as "instructional error" and, consequently, its application of harmless error review.  *See* Dissenting Op. at 2.  The misdescription of an element of a crime, however, does not become something other than an "instructional error" simply because the instruction given mistakenly recites an element of a lesser crime.  Like the instruction in *Neder* that wholly omitted an element of the offense, such an instruction is legally inadequate and deprives the defendant of an actual jury finding on every element of the offense of conviction.  While application of harmless error review in such circumstances may indeed create tension with the Sixth Amendment, *see* Dissenting Op. at 4, *Neder* resolved this tension and is controlling in this case.  Thus, the characterization of the error as "instructional error" is meant only to distinguish the type of legal insufficiency present in this case from the type of legal insufficiency present in *Yates* and *Stromberg*, both of which involved legal errors that were not subject to harmless

(continued...)

consequence, application of harmless error review to the erroneous portion of the instruction alone is not unnecessary or impossible, as it was in *Stromberg* and other cases arising in the typical *Stromberg* context.[3]  Thus, *Stromberg* does not preclude application of harmless error review to determine whether, absent the instructional error, the jury would nevertheless have convicted Holly of felony civil rights violations involving aggravated sexual abuse, premised on the victims' fear of death, serious bodily injury, or kidnapping.  If the error is harmless as to the erroneously instructed ground considered separately, that ground is no longer insufficient to support the conviction and *Stromberg* does not require reversal.  All *Stromberg* requires is that Holly's convictions be reversed if

---

[2](...continued)
error review and therefore could not sustain a conviction under any circumstances. *Yates v. United States*, 354 U.S. 298, 312 (1957) (concluding one ground for conviction violated the statute of limitations), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1 (1978); *Stromberg v. California*, 283 U.S. 359, 368 (1931) (concluding first ground for conviction violated the Fourteenth Amendment).

[3]Although the invalid ground in *Stromberg* violated the Constitution, the *Stromberg* rule has been extended to apply whenever one of the possible grounds of conviction was legally inadequate for any reason. *See Yates*, 354 U.S. at 312 (applying the *Stromberg* rule where one of the independent grounds for conviction violated the statute of limitations); *Griffin v. United States*, 502 U.S. 46, 55-56 (recognizing extension of *Stromberg* rule).  Its application, however, has been primarily confined to grounds for conviction that are legally erroneous in their entirety. *See, e.g.*, *Yates*, 354 U.S. at 312; *United States v. Pearl*, 324 F.3d 1210, 1213 (10th Cir. 2003); *United States v. Self*, 2 F.3d 1071, 1093 (10th Cir. 1993).  In such a context, unlike the current case, harmless error review cannot apply to the invalid ground alone because "[t]here is no object . . . upon which harmless-error scrutiny can operate." *Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993).

harmless error review reveals those convictions cannot be sustained on the basis

of the fear theory. *See Stephens*, 462 U.S. at 881. Application of harmless error

review in this manner to an instructional error on an element of the offense pays

heed to *Neder* and yet does not conflict with *Stromberg*.[4]

In *United States v. Holland*, this court held that an instructional error on

one of two independent alternative grounds for conviction required the conviction

to be set aside "unless we can be assured the jury did in fact rely on the valid

ground, or unless . . . the jury necessarily made the findings required to support a

conviction on the valid ground." 116 F.3d 1353, 1358 (10th Cir. 1997), *overruled*

*on other grounds*, *United States v. Bousley*, 523 U.S. 614 (1998). While relying

on harmless error principles, however, the court essentially did no more than

apply the traditional *Stromberg* rule itself.[5] Because the court concluded the jury

---

[4]The Eleventh Circuit has adopted this approach to application of harmless
error review in the *Stromberg* context. *See Parker v. Sec'y for the Dep't of
Corrs.*, 331 F.3d 764, 776-79 (11th Cir. 2003).

[5]Even under the traditional *Stromberg* analysis, a verdict need not be set
aside where it is possible to conclusively determine the jury relied on a valid
ground, such as where a special interrogatory verifies such reliance or where no
evidence is admitted at trial to support the legally erroneous ground. *See United
States v. Weidner*, 437 F.3d 1023, 1044 (10th Cir. 2006) (concluding lack of
evidence on legally erroneous theory established jury relied on valid theory);
*LaFevers v. Gibson*, 182 F.3d 705, 716 (10th Cir. 1999) (declining habeas relief
because special verdict form established jury convicted on valid ground). In
addition, the verdict may be affirmed where facts necessarily found by the jury
encompass the findings required to support a conviction on a valid ground.
*Weidner*, 437 F.3d at 1044; *United States v. Holland*, 116 F.3d 1353, 1359 (10th
Cir. 1997). Neither of these situations is present in this case.

findings necessarily established the elements of a conviction on the valid ground, it was unnecessary for the court to consider the application of harmless error review to the erroneously instructed ground. *Id.* at 1359.

In addition, *Holland* was decided before *Neder*, which explained that harmless error review allows this court to look beyond what the jury actually found to what a rational jury would have found under a proper instruction. *Neder*, 527 U.S. at 16-18 & n.1 (concluding error was harmless even though jury did not actually make a finding on the erroneously omitted element). Although *Stromberg* continues to preclude application of harmless error review to the valid ground, except under the narrow standard recognized by *Holland*,[6] application of harmless error review to the erroneously instructed ground is permitted and is no longer confined to a review of what the jury necessarily found. Therefore, if otherwise appropriate, this court may analyze the evidence of fear of death,

---

[6]In applying harmless error review in the *Stromberg* context, this court may not affirm a conviction based solely on overwhelming evidence of the properly instructed ground. *Cf. Pearl*, 324 F.3d at 1213-14 (reversing child pornography conviction where jury was erroneously instructed it could convict the defendants based on images that "appeared to be" minors, regardless of how much the images seemed to be actual minors and despite the defendant's acknowledgment at trial that the images depicted minors engaged in sexually explicit conduct). Reliance on the valid ground, without an actual jury finding, too closely resembles a presumption that the jury relied on that ground, thus undermining even the most narrow applicability of *Stromberg*. The possibility that the jury could have based its verdict in this case on the alternative force instruction, for which there was no error, is therefore irrelevant. *See Stromberg*, 283 U.S. at 368 (1931) (refusing to sustain a conviction even though it may have been based on a valid ground).

serious bodily injury, or kidnapping presented in support of Holly's convictions under the rubric of harmless error.

## 2. Application of Harmless Error Review

A constitutional error is harmless and may be disregarded if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[7] *Neder*, 527 U.S. at 15 (quotation omitted). An instructional error may be harmless where the element on which the jury was not properly instructed was "uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Id*. at 17. Because this court's harmless error review must focus exclusively on the erroneously instructed "fear" element, the error is harmless in this case only if it is clear beyond a reasonable doubt that the jury would have found Holly placed the victims in fear of death, serious bodily injury, or kidnapping, had it not been erroneously instructed that "fear of some bodily harm" was sufficient.

It is well-established that the burden of proving harmless error is on the government. *United States v. Serawop*, 410 F.3d 656, 669 (10th Cir. 2005). In this case, however, the government has failed to raise harmless error as an

---

[7]A conviction violates due process if the state is not required to prove every element of the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). In this case, the erroneous jury instruction relieved the government of its burden to show the victims were placed in fear of death, serious bodily injury, or kidnapping, which was a necessary element of the offense of deprivation of rights under color of law involving aggravated sexual abuse. Thus, the erroneous jury instruction in this case is constitutional error.

alternative ground to affirm Holly's convictions. Nevertheless, where the government has failed to assert harmless error, this court "may in its discretion initiate harmless error review in an appropriate case." *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) (quotation omitted). In deciding whether to exercise its discretion to address harmlessness, this court considers "(1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district court."[8] *Id.* at 1225.

The record in this case consists primarily of the 700-page trial transcript of a five-day jury trial involving thirty-two witnesses. Each of the fifteen counts involved conduct occurring on separate occasions and each required separate proof. *See id.* at 1225 (declining to *sua sponte* raise harmless error where each conviction involved "discrete and specific transactions" and each required "separate proof"). Although not all fifteen counts are at issue in this appeal, the absence of argument by the parties, caused by the government's failure to argue harmless error, leaves this court with the difficult task of determining which portions of the transcript may be relevant to the five counts in question. This

_____

[8]This court has quite reasonably questioned the relevance of the third factor. *See United States v. Samaniego*, 187 F.3d 1222, 1225 n.2 (10th Cir. 1999). In this particular case, the third factor bears no weight in this court's analysis. As a consequence, this court's decision whether to *sua sponte* address harmlessness depends solely on a balancing of the first two factors.

court should therefore be hesitant to engage in an "unsolicited, unassisted, and undirected harmless error review" to determine whether the error was harmless beyond a reasonable doubt. *Id.* Further, it should be with a great deal of trepidation that an appellate court undertake a full, independent harmless error review of a lengthy record when the convicted defendant has been deprived of the adversary process on the issue of harmlessness.[9]

Despite this court's general reluctance to *sua sponte* apply harmless error review, it may be appropriate to do so where the certainty of the harmlessness is readily apparent. Evaluation of the certainty of the harmlessness necessarily requires this court to review the record to some extent, though not to the same degree as would be required pursuant to a full harmless error review. As noted above, such review must be constrained to the fear element and must not extend to evidence of the force element for which the instruction was proper.

Even a preliminary review of the trial transcript leads this court to conclude that the harmlessness of the instructional error is certain as to Count V, for the reasons more fully discussed below. Thus, this court concludes it is appropriate

---

[9]The erroneous instruction in this case was not proposed by the government and was apparently proposed by the district court after the close of evidence. The instruction proposed by the defendant simply mirrored the language of the statute. Thus, it can only be assumed that the defendant proceeded throughout trial on the assumption that the jury would be properly instructed on the elements of the offense.

to *sua sponte* engage in a full-scale harmless error review as to this count.[10] It would not generally be appropriate to engage in a full-scale harmless error review as to Counts II, IV, VI, and VII because the harmlessness of the instructional error is far from certain as to those counts. This is a unique case, however, in that the harmlessness of one of the five counts is both certain and readily apparent. Because this court must conduct a thorough examination of the entire record in conducting harmless error review as to Count V, it therefore will fully consider the evidence and the issue of harmlessness as to the other counts as well. Based on this independent review of the trial transcript, this court concludes the instructional error is harmless as to Count V. As to Counts II, IV, VI, and VII, however, the error is not harmless.

### a. Count V

This court's review of Helmert's testimony at trial renders it certain that the requisite element of fear of death, serious bodily injury, or kidnapping was "uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 17. A thorough examination of the entire trial transcript further confirms this conclusion.

At trial, Helmert testified as follows:

---

[10]The limited appendix submitted by the defendant contained only portions of the trial transcript and is inadequate to allow for proper harmless error review. Prior to oral argument, however, this court, *sua sponte*, supplemented the record with the entire trial transcript.

Q. [Prosecutor] What happened at that point?

A. [Helmert] At that point, I go—my back is towards the door and I go—and he grabs me and he said—and I said, "Get away from me."

And he says that if he can't get to me, he'll get to my family, and my little sister is cute too. He goes, "Your little sister is awfully cute too." And my little sister is nine years old.

Q. Did that upset you?

A. Yes, very much.

And I go to turn around and he's looking at—his gun is sitting on the table and he's looking at his gun the whole time, you know, or he would look down at it. And he pushed me up beside the door and pushed me down on the ground and he had his hand over my mouth and he's kissing my neck and he starts to kiss my neck and I keep on moving it and I'm trying to push him off and he puts his hands—his hand down there and touched me, and then I started kicking. I got off and he said, "Get up," he said, "You are too loud," and then he said a cuss word and he said, "You are too loud, get out of my office."

This testimony provides overwhelming evidence that Holly placed Helmert in fear that either she or her nine-year-old sister would be subjected to death, serious bodily injury, or kidnapping. *See* 18 U.S.C. § 2241(a)(2) (stating aggravated sexual abuse is committed where the victim is threatened or placed in fear "that *any person* will be subjected to death, serious bodily injury or kidnapping" (emphasis added)). In addition to the explicit threat to Helmert's sister, the testimony that Holly repeatedly looked at the gun prior to engaging in the sexual assaults constitutes direct and specific testimony of an implicit threat of death or serious bodily injury. Given this express testimony on the requisite degree of fear, there is no way a rational jury could have concluded Helmert was placed in

-23-

fear of some bodily harm, as this jury necessarily did, without also concluding she was placed in fear of death or serious bodily injury.

Further, Helmert's testimony regarding both the explicit and implicit threat was entirely uncontested by Holly. On cross-examination of Helmert, Holly did not challenge whether these threats were actually made and did not inquire into the degree of fear Helmert felt at the time the sexual abuse occurred. In contrast to the cross-examination of other victims, Holly failed to question Helmert as to whether he made threats to kill or seriously injure her if she did not submit to his advances. Rather, the only cross-examination of Helmert regarding the incident was brief and focused exclusively on whether anyone else was present and could have heard her screams. Even if the jury convicted Holly on the basis of the legally erroneous fear instruction, it clearly rejected Holly's defense, implied in the cross-examination of Helmert and established clearly by his own testimony, that the incident did not occur. Thus, Holly's conviction on Count V is like the defendant's conviction in *Neder* where the element that was not properly submitted to the jury was supported by overwhelming and uncontroverted evidence. *Neder*, 527 U.S. at 17. In such a situation, the error could not have contributed to the verdict obtained and the error is harmless.

### b. Counts II, VI, and VII

The evidence that Holly placed Partain, Hyslop, and Foreman in fear of death, serious bodily injury, or kidnapping at the time the sexual abuse occurred

is neither uncontested nor overwhelming. A review of the trial transcript reveals some evidence that could support a finding of the requisite degree of fear as to these counts. All three victims testified that they were "scared" and that Holly's gun was present and within reach at the time the sexual abuse occurred. Hyslop further elaborated that she "was scared [Holly] would shoot" her because he told her "he killed a lot of people in his time and he has a reputation for killing people in Wilburton." While such testimony may provide evidence of the requisite degree of fear, however, it does not stand alone.

Unlike the testimony of Helmert, the testimony of these three witnesses also contained significant admissions that would tend to undermine a finding of the requisite fear element. Partain and Foreman each testified they were motivated in part by a desire to obtain privileges from Holly. Likewise, Hyslop admitted she previously told an FBI agent she had sex with Holly in exchange for favors and special treatment. On cross-examination, each of these three victims testified that Holly made no threats to kill them or seriously injure them if they refused to have sex with him. Thus, unlike the omitted element in *Neder*, the requisite fear element as to these three victims was specifically contested by defense counsel at trial. Although there was evidence Partain, Hyslop, and Foreman were placed in significant fear, the existence of evidence suggesting they were motivated by something other than fear renders it far from clear what the jury would have found if it had been properly instructed on the requisite

-25-

degree of fear. Given all of this evidence, this court cannot conclude beyond a reasonable doubt that the instructional error was harmless as to Counts II, VI, and VII.

### c. Count IV

The testimony of Fowler also does not constitute such overwhelming evidence of fear of death, serious bodily injury, or kidnapping as to render the erroneous jury instruction harmless. In response to an open-ended question asking Fowler to describe the sexual abuse, she did not initially mention that a gun was present. It was only after the prosecutor suggested the significance of the gun, several questions later and following an intervening change in subject, that Fowler testified Holly's gun was within his reach during the sexual abuse and that this made her "[v]ery uncomfortable, scared." This isolated and general statement regarding fear, however, does not alone establish beyond a reasonable doubt that the jury would have found Fowler was in fear of death, serious bodily injury, or kidnapping. Significantly, Fowler's response was not further developed by questions qualitatively probing the degree of fear she felt. While Fowler's testimony certainly provides evidence from which the jury could have inferred the requisite degree of fear, it does not so overwhelmingly support the fear element as to make the error harmless beyond a reasonable doubt as to Count V.

## IV. Conclusion

Based on the testimony presented at trial, it is entirely possible the jury would have found Holly committed aggravated sexual abuse upon each of the five victims, had it been properly instructed on the statutory elements of the crime.[11] The question before this court on harmless error review, however, is whether the verdict would have been the same beyond a reasonable doubt. After a review of the record, this court concludes the error is harmless only as to Count V.

For the foregoing reasons, this court **reverses** and **remands** this case to the district court to vacate Holly's convictions on Counts II, IV, VI, and VII. This court **affirms** Holly's conviction on Count V.

---

[11]The reversal of Holly's convictions on four of the counts at issue does not preclude a retrial on these counts because the double jeopardy clause bars retrial only where the government presents no evidence that could support a conviction. *Pearl*, 324 F.3d at 1214. Here, the government has presented sufficient evidence to permit a jury to find Holly guilty of aggravated sexual abuse on either the force or the fear theory.

No. 05-7130, United States v. Melvin Ellis Holly

**KELLY**, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion except insofar as it affirms the conviction on Count V by means of a harmless error review. I would reverse and remand for a new trial on all counts.

To determine whether a defendant's acts, which deprived another "of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States" in violation of 18 U.S.C. § 242, constituted aggravated sexual abuse, it is necessary to reference 18 U.S.C. § 2241. Section 2241 criminalizes aggravated sexual abuse in certain instances giving rise to federal criminal jurisdiction. The fear component of an aggravated sexual abuse conviction under § 2241(a)(2) requires proof beyond a reasonable doubt that the defendant caused another person to engage in a sexual act "by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." See 18 U.S.C. § 2241(a)(2). In this case, the district court, seizing upon the Fifth Circuit's language in United States v. Lucas, 157 F.3d 998, 1002-03 (5th Cir. 1998), erroneously instructed the jury that "[t]he requirement of fear [under § 2241(a)(2)] may be satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm." See Ct. Op. at 5. In so doing, the district court essentially instructed the jury that it could find Mr. Holly guilty of depriving his victims of their federal rights by

means of aggravated sexual abuse under 18 U.S.C. § 242 so long as it found that he had committed non-aggravated sexual abuse under 18 U.S.C. § 2242(1), a statute which only requires a defendant to have caused "another person to engage in a sexual act by threatening or placing that other person in fear . . . ." See id. at 13.

The court views this as "merely an instructional error," and therefore applies Neder's harmless error test. See id. at 15, 18. But the error was not merely instructional; rather, the district court instructed the jury it could convict Mr. Holly on a ground that was legally insufficient. In other words, this is not a simple case of mis-description or omission of an element of the offense. Instead, the jury was told it could convict Mr. Holly under § 242 so long as it found him guilty under § 2242(1). One's guilt under § 2242(1), however, is a legally insufficient basis on which to hang an aggravated sexual abuse conviction under § 242. What is required is a violation of § 2241.

The circumstances in this case call to mind the holdings of Yates v. United States, 354 U.S. 298 (1957), overruled in part on other grounds by Burks v. United States, 437 U.S. 1 (1978), and Griffin v. United States, 502 U.S. 46 (1991). Yates teaches that a general verdict must be set aside where "the verdict is supportable on one ground [(here, the force component of § 2241(a)(1))], but not on another [(here, the fear component of § 2242)], and it is impossible to tell which ground the jury selected." 354 U.S. at 312; see also United States v.

-2-

<u>Miller</u>, 84 F.3d 1244, 1257 (10th Cir. 1996), <u>overruled in part on other grounds by</u> <u>United States v. Holland</u>, 116 F.3d 1353, 1359 n.4 (10th Cir. 1997) ("Because the instruction defining one of the two alternative grounds for conviction was legally erroneous, we must reverse the conviction unless we can determine with absolute certainty that the jury based its verdict on the ground on which it was correctly instructed."). The Supreme Court, in <u>Griffin</u>, clarified that the rule in <u>Yates</u> only applies in the case of legal error, which it defined as "a mistake about the law." 502 U.S. at 59. The Court explained that legal error must result in the setting aside of a general verdict because:

> When . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors <u>are</u> well equipped to analyze the evidence.

<u>Id.</u>

The error in this case falls within the legal error category with which jurors are particularly ill suited to deal—after all, there is no reason to believe that the jurors' "own intelligence and expertise" would have led them to conclude that placing another in fear of "some bodily injury" was legally insufficient and that placing another in fear of "death, serious bodily injury, or kidnapping" is what the statute actually requires. And because we cannot be sure that the jury's verdict relied solely on the properly instructed force component, I would simply set aside

the verdict as to all counts, including Count V, without conducting harmless error review.

Even if harmless error review applies to this type of instructional error, we should not undertake it. The burden of showing that an error is harmless lies with the government, but the government did not argue harmlessness and we ought not raise it sua sponte without the benefit of briefing. Given the constitutional implications of Neder—it essentially allows us to grant judgment as a matter of law in a criminal case in tension with the Sixth Amendment jury trial right—we should be cautious in deeming an error harmless on a record that is less than clear and without the benefit of the adversarial process. In recognition of the difficulty of conducting harmless error review sua sponte, we have previously cabined our discretion to do so with the following three factors: "(1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district court." United States v. Samaniego, 187 F.3d 1222, 1224 (10th Cir. 1999).

The first factor undoubtedly weighs against such a review in the instant case—the trial transcript alone spans 700 pages, the jury trial lasted five days, a total of 32 witnesses were called, and each of the fifteen counts against Mr. Holly required separate proof. See Ct. Op. at 20. Under the second factor, the evidence as to fear of serious bodily injury, death, or kidnapping is debatable as to Count

V.  To be sure, the evidence could give rise to a permissible inference that Mr. Holly threatened Ms. Helmert with serious bodily injury, death, or kidnapping.  I do not think, however, that the jury was required to, or necessarily did, find that such a threat occurred.  Nor can I say that the fear component of Count V was uncontroverted.  Mr. Holly's primary defense at trial was that the incident did not occur; given that defense, it is not surprising that the requisite degree of fear was not fully developed, but that does not mean it is uncontroverted.  In fact, implicit in Mr. Holly's defense that the incident did not occur is the assertion that a threat serious enough to satisfy § 2241(a)(2) also did not occur.

In sum, I would reverse on all counts and remand for a new trial.