**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAVID SCOTT,

    Defendant - Appellant.

No. 16-1474
(D.C. No. 1:15-CR-00030-MSK-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **McHUGH**, Circuit Judges.

---

A jury convicted David Scott of possession of a firearm by a felon and sentenced him to 60 months in prison. Scott appeals his conviction and sentence. He challenges the jury instructions, admission of prior bad acts evidence under Rule 404(b), and the district court's variance of the sentence upwards to 60 months from a United States Sentencing Guidelines range of 27 to 33 months.

The government concedes the jury instruction for constructive possession misstated the law and constituted error. We agree and further find it to be plain

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

error. Accordingly, we reverse the judgment of the district court and remand with instructions to vacate the underlying conviction and sentence and to retry Scott in accordance with this Order and Judgment.

## I. Background

Scott was a passenger in a car that collided with another car. A police officer observed the collision, and investigated the accident. He found three passengers, but the driver of the car had fled.

Once other officers arrived at the scene, the police asked for identification from Scott and the other passengers. Scott complied and also gave information about the seating arrangement of the passengers when asked. Scott was seated in the back on the passenger side. One of the other passengers was seated in the front passenger's seat, and the other was seated behind the driver.

Officers searched the vehicle and found a worn blue or black Star PD-CAL .45-caliber pistol under the middle of the back seat. The gun was wrapped in a red bandana and was next to a red-stitched, gray work glove. Scott was wearing and carrying several red articles of clothing and accessories: a red and black hat, black jeans with red stitching at the bottom of the back pockets, a red and white belt, a red lighter, and a red cell phone case.

After officers found the gun and learned that Scott had a prior conviction for being a felon in possession of a firearm, the officers arrested Scott.

Authorities later swabbed Scott's cheek for DNA, and his DNA matched one of three partial DNA profiles on the gun.

He was tried and convicted of being a felon in possession of a firearm and sentenced to 60 months in prison.

## II. Analysis

After failing to object to the jury instructions at trial, Scott contends on appeal, subject to plain error review, that the jury instructions misstated the elements for constructive possession of a firearm. The government agrees. Nonetheless, the government argues this mistake does not qualify as "plain error" because the erroneous instructions did not affect his substantial rights, nor did they seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Scott also challenges some of the evidence admitted at trial and the length of his sentence.

We conclude the incorrect jury instruction constituted plain error, so we reverse and remand.

### A. Jury Instructions

As the government concedes, the standard for constructive possession given in the jury instructions was based on case law that is no longer valid.[1] Jury

---

[1] The instructions were consistent with a number of past cases before the standard changed. *See, e.g.*, *United States v. Denson*, 775 F.3d 1214, 1220 (10th Cir. 2014); *United States v. Morales*, 758 F.3d 1232, 1235 (10th Cir. 2014);

(continued...)

Instruction No. 14 contained the standard for constructive possession:

> In determining whether the Government has shown that Mr. Scott possessed a firearm, you are instructed that a person possesses a firearm if he has either actual or constructive possession of it. A person has actual possession of a firearm if that person has direct physical control over the firearm at a given time. *A person has constructive possession of a firearm if that person does not have actual physical possession of the firearm at a particular point in time but he knows of the firearm's presence and that he has the power to take physical control of it.*
>
> Multiple people may be in constructive possession of a firearm simultaneously if each person has knowledge of the firearm's presence and each person has the power to control it. However, merely being in the presence of others who have possession of a firearm does not constitute possession.

R., Vol. IV at 571 (emphasis added).[2] Under this instruction, the jury could find Scott constructively possessed the gun if he knowingly had the power to control it.

This instruction no longer accurately reflects the law because our circuit now requires an additional element of intent for constructive possession. In *United States v. Little*, we explained that *Henderson v. United States*, 135 S. Ct. 1780 (2015), "change[d] the law of constructive possession in our circuit." 829

---

[1](...continued)
*United States v. Kitchell*, 653 F.3d 1206, 1228 (10th Cir. 2011).

[2] The court also instructed the jury on actual possession. The jury used a general verdict form, so we do not know which theory it used to convict Scott.

F.3d 1177, 1182 (10th Cir. 2016). "[C]onstructive possession exists when a person not in actual possession knowingly has the *power and intent* at a given time to exercise dominion or control over an object." *Id.* (emphasis added). And in *United States v. Simpson*, we further clarified "[i]t was no longer enough to show that [the defendant] knew about the items and could control them." 845 F.3d 1039, 1060 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 140, 199 (2017). Thus, while previous cases only required *power and knowledge*, after *Little* and *Simpson*, constructive possession requires three elements: *power, knowledge, and intent* to control. The difference is crucial. Intent is more difficult to show than knowledge of the illicit contraband or weapon; intent requires purposeful resolve in exercising dominion or control over the item.

Despite the incorrect instructions, Scott acknowledges he did not object at trial and has consequently asked for plain error review. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. McGlothin*, 705 F.3d 1254, 1260 (10th Cir. 2013). The government concedes the first two elements: the erroneous instruction constituted an error that was plain.

The government, however, contests the third and fourth elements.

As to the third element, an error affects a defendant's substantial rights if there is "reasonable probability that, but for the error, the outcome of the

-5-

proceeding would have been different." *Simpson*, 845 F.3d at 1060 (citation omitted). And, a "plainly erroneous jury instruction affects a defendant's 'substantial rights' if the instruction concerns a principal element . . . of the crime, thus suggesting that the error affected the outcome of the case." *Simpson*, 845 F.3d at 1061 (quoting *United States v. Duran,* 133 F.3d 1324, 1330 (10th Cir. 1998)).[3]

The jury instruction on constructive possession for Scott's trial misstated a principal element of the charged crime—intent—and in doing so removed the burden from the government of proving Scott's intent to possess the firearm. In *Simpson*, we encountered a nearly identical omission in jury instructions. We found the defendant's substantial rights were affected because "the erroneous jury instruction had omitted an important element of the crime, *intent*, and the defense's theory had focused on that element." *Id.* at 1061 (emphasis added). Even with stronger evidence of constructive possession, we concluded the jury could have reasonably concluded that the defendant did not intend to possess the firearm.

---

[3] The government argues that Scott erroneously relied on *United States v. Holly*, 488 F.3d 1298, 1307 (10th Cir. 2007), in claiming that "it was the *government's* burden to show beyond a reasonable doubt that the error did not contribute to the verdict." Aple. Br. at 40. We agree with the government on this point, even though we ultimately conclude Scott has met his higher burden.

To satisfy the fourth element, the defendant must show the instructional error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *McGlothin*, 705 F.3d at 1260.  We have found that instructional errors do not always meet this element.  *United States v. Wolfname*, 835 F.3d 1214, 1223 (10th Cir. 2016).  But as we recently recognized in *Simpson*, 845 F.3d at 1063, where "the government's evidence on intent was not overwhelming, the instructional error seriously affected the fairness, integrity, or public reputation of the judicial proceedings, " citing *Wolfname*, 835 F.3d at 1223 (concluding that the failure to instruct on an essential element of the crime satisfied the fourth element of the plain-error test because the government's evidence on the omitted element of the crime was neither overwhelming nor uncontroverted).

In Scott's case, the evidence is not overwhelming.[4]  Scott was in a car with three other individuals, none of whom claimed the gun.  A jury certainly could reasonably conclude—as the jury likely did—that Scott had knowledge of the gun.  But possession requires more than mere knowledge; it requires intent to control.  The government points to mostly circumstantial evidence linking Scott to

---

[4]  The government also argues the evidence for actual possession was overwhelming and would make the error harmless, but we are not convinced.  The government did not show any compelling evidence of ownership or "direct physical control" of the gun at the relevant time.  *United States v. Benford*, 875 F.3d 1007, 1020 (10th Cir. 2017) (quoting *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015)).

the gun: the position of the gun, Scott's DNA, and the red motif across Scott's clothing and accessories. We are unpersuaded.

First, the gun was located under the middle seat of the rear compartment, and another passenger had direct access to the gun. And Scott emphasized at trial that he was right-handed, so he would have had to reach across his body to access the gun from his seat on the passenger side of the car. In other words, the gun's positioning would constitute unnatural placement of the gun for a right-handed person, who might want the gun to be closer to the right side of his body for easier access. And Scott suggested the gun may have moved its position under the back seat following the collision, given the looseness of the seat.

As to the DNA evidence, the government's expert found it was inconclusive—Scott's DNA was one of three DNA profiles found on the gun. The government's expert admitted the DNA was "trace DNA or touch DNA," meaning it could have reached the gun through secondary transfer, such as touching someone else who eventually touched the gun. R., Vol. IV at 371–372. The expert also opined that the gun's magazine had touch DNA, but the partial profile of the DNA found on the magazine did not match Scott's DNA. In fact, the expert admitted it was "some other person's DNA." *Id.* at 393. And there were no fingerprints on the gun.

Finally, the red bandana containing the gun and the red-stitched work glove found next to it do not directly implicate Scott. Two of the other occupants of the

car admitted they also were members of a gang known as the "Bloods," and all occupants were "wearing red clothing and other items that [we]re . . . consistent with Bloods gang membership." R., Vol. IV at 638. Because of the general importance of red for the Bloods and because the red motif was not unique to Scott, the bandana and glove could be linked to any of the other occupants of the vehicle.

Therefore, we conclude that had the court issued the legally correct instructions including the *intent* element, the outcome of Scott's trial might have been different. Accordingly, this error affected Scott's substantial rights—establishing the third element of plain error.[5] We also conclude the fourth element of plain error has been met. As in *Simpson,* the lack of overwhelming and uncontroverted evidence meant "the fairness, integrity, or public reputation of the judicial proceedings" were affected. 845 F.3d at 1062.

Consequently, we find plain error and remand for a new trial.

### B. Rule 404(b) Evidentiary Challenges and Sentence

---

[5] The government also contends it proved actual possession. The only evidence offered for actual possession was what we described above in discussing constructive possession. While the parties discuss the applicability of *Holly*, 488 F.3d 1298 (10th Cir. 2007), we ultimately find it inapplicable since the third element of plain error would be satisfied under either theory of possession. Nor is *United States v. Fykes*, 678 F. App'x 677 (10th Cir. 2017) (unpublished), persuasive since the gun in that case was located in the defendant's backpack along with his passport, laptop, and other personal items.

Scott challenges three admissions of evidence by the district court relating to prior bad acts: (1) Scott's prior conviction under the same statute of being a felon in possession of a firearm, (2) testimony of Scott's prior girlfriend indicating that Scott possessed a "small gun" in 2012, and (3) her testimony that Scott stole one of her other guns in the past. He also argues that his sentence is substantively unreasonable.

Since we are remanding for a new trial, we decline to opine on the challenges to the evidence or his sentence. It is unclear whether the government will pursue the same evidence on remand, and Scott is free to seek a motion in limine regarding the objectionable evidence. If Scott is reconvicted he will be entitled to resentencing, and the facts and circumstances at that time will differ from those asserted on appeal.

## III. Conclusion

Because the district court plainly erred by giving the jury a legally erroneous instruction, we **REVERSE** the judgment of the district court and remand with instructions to vacate the underlying conviction and sentence and to retry Scott in accordance with this Order and Judgment.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge