**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN HERNANDEZ,

    Defendant - Appellant.

No. 21-3155
(D.C. No. 2:14-CR-20046-JWL-TJJ-1)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **BRISCOE**, and **MATHESON**, Circuit Judges.
_____

Defendant John Hernandez appeals from the district court's denial of his 18

U.S.C. § 3582(c)(1)(A)(i) motion for compassionate release.  Exercising jurisdiction

pursuant to 28 U.S.C. § 1291, we affirm.

I

Hernandez is a native and citizen of Belize.  In 2014, he pled guilty to

distribution of methamphetamine and unlawful reentry after a prior aggravated felony

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

conviction. The district court sentenced him to 108 months' imprisonment on the distribution conviction and 48 months' imprisonment on the unlawful reentry conviction, with the terms to be served concurrently. The district court also ordered Hernandez to serve a three-year term of supervised release following the conclusion of his terms of imprisonment.

In June 2021, Hernandez filed several pro se motions seeking immediate compassionate release under § 3582(c)(1)(A)(i). Hernandez noted in his motions that his projected release date was August 31, 2022. He argued, however, that the risk he would contract COVID-19 in prison amounted to an extraordinary and compelling circumstance justifying early release because he suffered from heart disease[1] and this condition placed him at greater risk of serious illness or death from COVID-19. Hernandez urged the court to exercise its discretion to order his release upon consideration of the 18 U.S.C. § 3553(a) factors. The district court denied the motions. Hernandez now appeals from the district court's decision.

II

"[T]he plain language" of § 3582(c)(1)(A)(i) "creates a three-step test." *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021) (internal quotation marks omitted). "At step one a district court must find whether extraordinary and compelling reasons warrant a sentence reduction." *Id.* at 938 (ellipsis and internal quotation marks omitted). "At step two a district court must find whether such

---

[1] According to Hernandez's motions, he "received (4) stents in [his] arteries on 12/7/2015." ROA, Vol. I at 68.

reduction is consistent with applicable policy statements issued by the Sentencing Commission."[2] *Id*. (ellipsis and internal quotation marks omitted). "At step three § 3582(c)(1)(A) instructs a court to consider any applicable 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id*. (brackets, ellipsis, and internal quotation marks omitted). "[D]istrict courts may deny compassionate-release motions" based on any of the three steps, "and do not need to address the others." *Id.* at 942 (italics and internal quotation marks omitted).

"We review a district court's order denying relief on a § 3582(c)(1)(A) motion for abuse of discretion." *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *Id*. (quotations omitted).

Here, the government conceded that Hernandez satisfied step one. To begin with, the government noted that the Department of Justice, consistent with the guidance of the Centers for Disease Control and Prevention, had identified "serious heart conditions, including . . . coronary artery disease" to be among the risk factors that place inmates at higher risk of complications from COVID-19. ROA, Vol. I at

---

[2] Because the Sentencing Commission's existing policy statement only applies to motions filed by the Director of the Bureau of Prisons, the second step is not relevant when, like here, the prisoner has moved for compassionate release. *See United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021).

114. The government in turn noted that Hernandez's medical records confirmed that he suffered from heart disease and had thus established an extraordinary and compelling reason allowing for consideration of compassionate release under § 3582(c)(1)(A). The district court accepted the government's step one concession and thus focused its analysis on step three.

The district court began its step three analysis by finding that, despite Hernandez's heart disease, his "particularized risk of harm from the coronavirus d[id] not appear to be substantially elevated." ROA, Vol. I at 152; *see Hald*, 8 F.4th at 947 (stating courts may consider the facts regarding extraordinary and compelling reasons for release in the § 3553(a) analysis). The district court noted in support that Hernandez's "medical records indicate[d] that his [heart] condition [wa]s being treated while in prison." ROA, Vol. I at 152. The district court also noted in support that Hernandez "ha[d] recently received [COVID-19] vaccinations, and the virus [wa]s by no means prevalent at [his] prison, with only two cases . . . at the present time."[3] *Id*. The district court stated that these facts, "along with the Section 3553(a) factors," persuaded it "that a sentence reduction to time served [wa]s not warranted here." *Id*.

---

[3] The district court stated in its decision that the two cases at Hernandez's prison were among the inmate population. In fact, however, the record indicates that those two cases were among prison staff, and that no inmates at the prison were suffering from COVID-19.

Among the § 3553(a) factors that the district court considered were Hernandez's criminal history and his history of disciplinary infractions while in prison.[4] The district court noted, after citing those two factors, that "[a] reduction would therefore result in an overall sentence that would not properly reflect the seriousness of the offense, and [Hernandez] has not shown that he would not pose a danger to others upon release." *Id*. at 152–53.

The district court also focused on Hernandez's status as an illegal immigrant and what that would mean for Hernandez in terms of freedom and COVID-19 risk if he were released from prison. With respect to the issue of Hernandez's freedom from confinement, the district court first noted that Hernandez "concede[d] that he w[ould] likely be deported to Belize upon the conclusion of this term of imprisonment." *Id*. at 153. "Thus," the district court concluded, it was unlikely "that a reduction of [Hernandez's] sentence to time served would . . . result in his freedom," and that instead he would likely "continue to be detained by ICE pending removal proceedings." *Id*. As for Hernandez's risk of contracting COVID-19, the district court noted "the dearth of present cases at [Hernandez's] prison" and in turn

---

[4] Those disciplinary infractions include: (1) disposing of contraband by swallowing it; (2) involvement in a two-on-one fight; (3) destroying property worth $100 or less; (4) giving or accepting money without authorization; (5) possessing twenty-two small strips of white paper hidden in his left sock and testing positive for heroin; (6) being absent from an assignment; (7) use of drugs or alcohol; (8) introduction of marijuana; (9) use of marijuana; (10) failing to stand count; (11) tattooing or self-mutilation; (12) phone abuse; and (13) giving or accepting money without authorization.

concluded "[t]here [wa]s no reason to believe that" Hernandez's risk of contracting

COVID-19 at an ICE facility "would be any lower." *Id*.

Lastly, the district court stated:

because [Hernandez] would not be subject to supervision in Belize, the requested reduction to time served would mean that [his] sentence failed to account for the seriousness of his offense to an even greater degree, as his sentence would be further reduced by the effective elimination of his term of supervised release.

*Id*.

In his appeal, Hernandez challenges some of the district court's findings and

conclusions. To begin with, he argues that his term of supervised release, and the

fact that he would not be subject to supervision if removed, has no rational

relationship to his motion for a reduced sentence. But Hernandez's arguments, in our

view, miss the point of the district court's reference to supervised release. Because it

is almost certain that Hernandez will be deported upon release from prison, he will

not be subject to supervision, as the district court originally intended when it imposed

the sentence. The district court simply concluded that fact, if combined with an early

release from prison and a resulting twelve-month or more reduction in his term of

imprisonment, would "fail[] to account for the seriousness of [Hernandez's]

offense."[5] *Id*. at 153. We are not persuaded that this conclusion, which focused on

_____

[5] Hernandez filed his pro se motions to modify his sentence on June 1, 2021, approximately fourteen months prior to his estimated release date from prison, and the district court issued its memorandum and order denying Hernandez's motions on August 27, 2021, approximately twelve months prior to Hernandez's estimated release date.

the length of Hernandez's imprisonment compared to the seriousness of his offenses of conviction, amounted to an abuse of discretion on the part of the district court.

Hernandez next complains that it was "speculative [for the district court] to assume that his ICE detainer would preclude effective relief" in terms of both his freedom and "his risk from COVID-19." Aplt. Br. at 17. We disagree. To begin with, we are not persuaded that the district court abused its discretion by inferring, based upon the undisputed facts regarding Hernandez's immigration status and his conviction for illegal reentry, that Hernandez will be taken into ICE custody immediately upon his release from prison. Indeed, we conclude that such an inference is entirely reasonable. To conclude otherwise would effectively require a district court, when faced with a motion for reduction filed by a prisoner who has been convicted of illegal reentry, to conduct an evidentiary hearing in order to make findings of fact regarding ICE's expected response to the prisoner's release from prison. Nor are we persuaded that the district court abused its discretion by inferring, based upon the extremely low rate of COVID-19 at Hernandez's prison, that it was unlikely that the COVID-19 rate at an ICE detention facility would be even lower.

Finally, Hernandez argues that the district court erred in finding that he had multiple prior convictions involving violence and the use of firearms. On this point, we agree with Hernandez. According to the presentence investigation report (PSR), Hernandez had three prior adult criminal convictions, all arising in the California state courts: (1) a 1992 conviction for assault, for which he was sentenced to 36 months supervision; (2) a 1993 conviction for robbery, for which he was sentenced to

7

5 years' imprisonment; and (3) a 1996 conviction for possession of a firearm by a felon, for which he was sentenced to 15 years' imprisonment. Unfortunately, the PSR does not provide a description of the underlying conduct that gave rise to these convictions. Thus, Hernandez is correct that the district court erred in finding that he "had multiple prior convictions that did involve violence and the use of firearms." ROA, Vol. I at 152.

That said, we have little trouble concluding that this erroneous factual finding was harmless.[6] The district court's overall concern, as we read its decision, was Hernandez's history of serious criminal conduct and disciplinary violations. And that concern, we conclude, is amply supported by the record on appeal. In terms of Hernandez's criminal history, the PSR makes clear that Hernandez has been involved in criminal activity since he was a teenager, and has spent most of his adult life either in confinement or engaged in criminal conduct. For example, Hernandez was confined in the California state prison system from 1997 through early 2010, when he was paroled on the possession of a firearm conviction at the age of 37. Approximately four years later, he was charged with the federal crimes—illegal reentry and distribution of methamphetamine—that gave rise to his current federal confinement. And, as for Hernandez's disciplinary violations, those are recounted in

---

[6] Although Hernandez correctly notes in his reply brief that the government has not argued harmless error, we have held that when harmless error is clear, we may raise it *sua sponte*. *See United States v. Holly*, 488 F.3d 1298, 1308 (10th Cir. 2007) ("Despite this court's general reluctance to *sua sponte* apply harmless error review, it may be appropriate to do so where the certainty of the harmlessness is readily apparent."). We conclude that is precisely the situation here.

undisputed detail in an attachment to the government's response to Hernandez's motion. Although Hernandez attempts to downplay the seriousness of some of those violations, the overall pattern exhibited by the record amply supports the concern expressed by the district court.

Thus, in sum, any factual errors that Hernandez has identified in the district court's decision do not persuade us that the district court abused its discretion in denying Hernandez's motion to reduce his sentence to time served.

III

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Senior Circuit Judge
