**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JONATHON RAY SWAN, a/k/a Jonothon
Swan, a/k/a Jonathon Swan,

    Defendant - Appellant.

No. 19-8068
(D.C. No. 2:19-CR-00009-SWS-1)
(D. Wyoming)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

Jonathon Ray Swan was convicted by a jury of knowingly, intentionally, and

unlawfully possessing with intent to distribute 500 grams or more of

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and

knowingly carrying a firearm during and in relation to a drug trafficking crime in

violation of 18 U.S.C. § 924(c)(1)(A)(i). On appeal, Mr. Swan argues the jury was

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

improperly instructed on the carrying a firearm offense. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Mr. Swan drove from Cheyenne, Wyoming to Aurora, Colorado, for an eleven-minute stop in front of an apartment building on December 16, 2018. Unbeknownst to him, a DEA taskforce was surveilling his journey and reported seeing him enter the apartment building and, shortly thereafter, exit while appearing to conceal something in his front jacket pockets. Mr. Swan was stopped on his return trip and a K-9 unit alerted on his vehicle. A search of the vehicle uncovered two pounds of methamphetamine and a Charter Arms .38-caliber revolver called a "Lady Lavender" in a "natural void" below the cup holders near the driver's seat. Mr. Swan states the firearm "was a woman's revolver." Appellant's Opening Br. at 2. A search of Mr. Swan's phone revealed messages on the WhatsApp application indicating Mr. Swan was engaged in narcotics trafficking.

Mr. Swan was charged in a two-count indictment with unlawfully possessing with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and knowingly carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). He was tried in a jury trial. Mr. Swan's defense was that he had purchased the vehicle only eighteen days prior and was unaware there were drugs and a firearm concealed in it.

2

Mr. Swan's proposed instruction on the carrying requirement included the following language:

> The phrase "carries a firearm" means having a firearm available to assist or aid in commission of the [drug] crime . . . .
>
> The Government is not required to show that Defendant actually displayed or fired the weapon. The Government is required to prove beyond a reasonable doubt, however, that the firearm was in the Defendant's possession or under the Defendant's control at the time that the drug trafficking crime was committed.

ROA, Vol. I at 308.

> The district court's proposed jury instructions on carrying a firearm included:
>
> (2) A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control, and (2) transports or moves the firearm from one place to another.
>
> (3) A firearm is carried "during and in relation to" the underlying crime when the Defendant avails himself of the weapon and the weapon plays an integral role in the underlying crime. A firearm plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence. At a minimum, the firearm must have the potential of facilitating (i.e., making it easier to complete) the underlying crime.
>
> The Government must prove a direct connection between the Defendant's carrying of the firearm and the underlying crime, but the crime need not be the sole reason the Defendant carried the firearm. To establish this connection, the evidence must show that the Defendant intended the firearm to be available for use during the underlying offense. A defendant "carries" a firearm if they knowingly possess and transport the firearm in a vehicle, including in a separate compartment of the vehicle, while the defendant is also in the vehicle.

*Id.* at 369.

Through counsel, Mr. Swan objected to the inclusion of the last sentence quoted above of the instruction. Although conceding it was "modified by the paragraph above," he suggested the challenged sentence was "too confusing" and

3

"contradictory," stating "I think just having that 'in the vehicle' is not enough."

ROA, Vol. III at 563. He asked the district court to instead use Defendant's Proposed

Instruction Z "which is just pretty much your first paragraph of that definition." *Id.*[1]

The district court moved the challenged portion to the definition of "carries" but

otherwise overruled the objection because the instruction correctly stated the law as

set forth in *United States v. Zapata-Reyes*, 536 F. App'x 804, 808 (10th Cir. 2013)

(unpublished).[2]

The jury found Mr. Swan guilty on both counts. The district court sentenced

him to 210 months' imprisonment on the narcotics count and a consecutive 60

---

[1] Defendant's Proposed Instruction Z reads:

A firearm is carried "during and in relation to" the underlying crime when []the defendant avails himself of the weapon and the weapon plays an integral role in the underlying offense. The "during and in relation to standard requires" the Government to prove a direct nexus between the defendant's carrying of a firearm and the underlying drug crime. Thus, the Government must prove that the defendant intended the firearm to be available for use in the offense. There is no requirement, however, that the drug trafficking crime be the sole reason for the possession of the gun.

ROA, Vol. I at 309.

[2] As given, Jury Instruction no. 13 stated, in relevant part:
A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control, and (2) transports or moves the firearm from one place to another. It applies to a person who knowingly possesses and transports a firearm in a vehicle, including in a separate compartment of the vehicle, while the person is also in the vehicle.

ROA, Vol. I at 404. The remainder of the court's proposed instruction quoted above was moved down a paragraph to incorporate the definition of "drug trafficking crime" as paragraph 3 and was altered further only in that "underlying crime" was changed to "underlying drug trafficking crime." ROA, Vol. I at 369, 404–05.

4

months' imprisonment on the firearm count. The court entered judgment on November 5, 2019, and Mr. Swan filed a timely notice of appeal on November 8, 2019.

## II.    DISCUSSION

The gravamen of Mr. Swan's argument on appeal is: By instructing the jury that the "carries" element of 18 U.S.C. § 924(c)(1)(A)(i) "applies to a person who knowingly possesses and transports a firearm in a vehicle, including in a separate compartment of the vehicle, while the person is also in the vehicle," the district court improperly took the question of whether Mr. Swan exercised ownership or control over the firearm from the jury. Appellant's Opening Br. at 8 (quoting ROA, Vol. I at 404). Where, as here, the appellant properly preserved the issue, "[w]e review the jury instructions de novo and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Christy*, 916 F.3d 814, 854 (10th Cir. 2019) (quotation marks omitted). "In doing so, we consider whether the district court abused its discretion in shaping or phrasing a particular jury instruction and deciding to give or refuse a particular instruction." *Id.* (quotation marks omitted).

We first considered the meaning of "carrying" as used in 18 U.S.C. § 924(c) in *United States v. Cardenas*, 864 F.2d 1528 (10th Cir. 1989). There, we held "possession was a requisite element of 'carrying a weapon in a vehicle,'" in addition to transportation. *Id.* at 1535. In the context of a motor vehicle, we explained that

"[t]he means of carrying is the vehicle, itself, rather than the defendant's hands or pocket, and the requirement of possession, the exercise of dominion and control, [is] consonant with the common legal definition of 'carrying a weapon in a vehicle' at the time of the enactment of § 924(c)." *Id.* at 1535–36. This standard has been distilled into the statement that "carry" under § 924(c)(1)(A) "has two elements: (1) possession of the weapon through the exercise of dominion or control; and (2) transportation of the weapon." *United States v. Lindsey*, 389 F.3d 1334, 1338 (10th Cir. 2004).

Taken as a whole, the jury instructions correctly conveyed this meaning. The district court first instructed the jury on the meaning of the word "possession" in Jury Instruction no. 10:

> "Possession" can be one of two kinds: actual possession or constructive possession. A person who knowingly has direct physical control over an object or thing at a given time is then in actual possession of that object. A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person, is then in constructive possession of that object. . . . Mere control over the place in which the object is found is not sufficient to establish constructive possession.

ROA, Vol. I at 400–01. Jury Instruction no. 13 then informed the jury, *inter alia*:

> A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control, and (2) transports or moves the firearm from one place to another. It applies to a person who knowingly possesses and transports a firearm in a vehicle, including in a separate compartment of the vehicle, while the person is also in the vehicle.

*Id.* at 404.

Mr. Swan takes issue with the second sentence quoted from Jury Instruction no. 13, arguing it allowed the jury to "skip" the requirement of exercise or control

6

inherent in possession and "go straight to the application in the second sentence and find the element proven by finding that [Mr.] Swan knowingly possessed and transported a firearm in a vehicle." Appellant's Opening Br. at 10–11. And Mr. Swan contends the deficiency in Instruction 13 is not cured by Instruction 10's definition of possession because that definition is overbroad due to its inclusion of "*the power* to exercise dominion or control without actually exercising dominion or control." Appellant's Reply Br. at 3.

The challenged sentence of Jury Instruction no. 13 states the law as set forth by our prior caselaw and *Muscarello v. United States*, 524 U.S. 125, 126–27 (1998): possession and transportation of a firearm in a vehicle suffices as "carrying" within the meaning of the statute. Contrary to Mr. Swan's suggestion, the district court did not improperly decide the inherent question of fact: whether Mr. Swan did possess the firearm.[3] Nor do the instructions mislead the jury to think so. The jury was instructed Mr. Swan would need to "possess[] the firearm through the exercise of ownership or control." ROA, Vol. I at 404. The second sentence merely—and clearly—noted this possession could occur in a vehicle, or separate compartment thereof while Mr. Swan was in the vehicle.

Additionally, the jury was instructed on the proper definition of possession, including constructive possession. Mr. Swan suggests the difference in wording— "the power to exercise dominion or control" rather than "the exercise of ownership or

---

[3] Neither did the instruction improperly force the jury to conclude Mr. Swan transported the weapon, but that is not at issue.

7

control"—is significant. It is not. In *United States v. McDonald*, 933 F.2d 1519, 1526 (10th Cir. 1991), we held the carry prong was satisfied where the "[d]efendant knew the weapon was there" and had "easy and quick access" to it. This is equivalent to the power to exercise dominion or control. As we explained in *McDonald*, the central point of *Cardenas* is that "constructive possession is sufficient to sustain a firearm possession conviction." *Id.*

Mr. Swan relies heavily upon *United States v. McKye*, 734 F.3d 1104 (10th Cir. 2013), but that case is inapposite. There, "the jury was erroneously instructed that all notes are securities." *Id.* at 1110. Whether a note is a security in that context is a mixed question of law and fact which should have been left to the jury alone. *Id.* Here, the district court properly defined possession for the jury. It further instructed the jury that the elements of the offense would be met if Mr. Swan knowingly possessed and transported the firearm in a vehicle, even in a separate compartment. But it left to the jury the factual determination of *whether* Mr. Swan knowingly possessed and transported the firearm.

The instructions were correct statements of law and did not infringe upon the province of the jury by deciding factual questions. In context, they provided the jury with an accurate understanding of the legal standards to apply and the district court did not abuse its discretion in fashioning the instructions.

## III.   CONCLUSION

We **AFFIRM** the district court's judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge